UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 5:26-cv-01018-AB-DSR | Date: | March 11, 2026 |

| | |
|---|---|
| Title: | *Akbota Zhalekeyeva v. Kristi Noem et al.* |

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] ORDER <u>GRANTING</u> PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [Dkt. No. 3]**

      On March 4, 2026, Petitioner Akbota Zhalekeyeva ("Petitioner") filed a Petition for Habeas Corpus ("Petition," Dkt. No. 1) challenging her re-detention at the Adelanto ICE Processing Center. Also on March 4, Petitioner filed an Application for Temporary Restraining Order ("TRO Application," Dkt. No. 3) seeking her immediate release from Respondents' custody, among other relief.

      On March 5, the Court entered an order observing that Respondents were served with Petitioner's Petition and TRO Application pursuant to Appendix C of the Local Civil Rules. The Court further ordered that if Respondents wished to respond to the TRO Application, they must do so by March 6, 2026, at 4:00 p.m. *See* Order (Dkt. No. 5). Respondents timely filed an Opposition (Dkt. No. 7). On March 7, 2026, Petitioner filed an unauthorized Reply (Dkt. No. 8). Replies in support of TRO Applications are not generally permitted. However, the Court exercises its discretion to consider Petitioner's Reply.

## I.  BACKGROUND

The facts as alleged in the Petition and recited in the TRO Application are straightforward and do not appear to be disputed. On August 18, 2024, Petitioner, her husband, and her child, citizens of Kazakhstan, presented themselves at the Otay Mesa, California Port of Entry and stated their intention to seek asylum. That same day, United States Customs and Border Protection ("CBP") exercised its discretion under Immigration and Nationality Act ("INA") § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), to grant to Petitioner and her family "humanitarian parole" into the United States. *See* Pet. Ex. A (I-94 admission record). At the same time, Respondents deemed Petitioner inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and served her with an I-862 Notice to Appear, placing her in removal proceedings under INA § 240, 8 U.S.C. § 1229a. *See* Pet. Ex. B (I-862 Notice to Appear).

Thereafter, Petitioner filed a timely application for asylum. *See* Pet. Ex. C (I-589 Application for Asylum). Petitioner has been subject to Respondent's Intensive Supervision Appearance Program ("ISAP"), has attended all scheduled hearings and appeared for every check-in, and has broken no laws. However, on February 28, 2026, as Petitioner was opening the door to leave the ISAP office after a routine check-in, Respondents detained her without explanation. Pet. pp. 8-9. Respondents detained Petitioner without prior written notice of the revocation of her parole, as required by 8 C.F.R. § 212.5(e)(2), nor was she given a pre-detention hearing before a neutral decisionmaker to determine if re-detention was justified. Pet. p.p. 9-10. Petitioner is the primary caregiver for her 3-year-old child, whom she alleges has been in acute distress since her sudden disappearance. Pet. p. 9.

Petitioner's habeas petition alleges that her re-detention is unlawful on two grounds: first, that Petitioner's re-detention without pre-deprivation notice and a hearing violates ICE's own regulations and thus violates due process, and second, that stripping Petitioner of her liberty without pre-deprivation notice and a hearing before a neutral decisionmaker violates her Fifth Amendment right to due process. Petitioner's TRO Application seeks her immediate release and other interim relief based on her second, Fifth Amendment, claim. Respondents oppose, but address only Petitioner's first claim, arguing that they have followed their own regulations. Respondents do not address Petitioner's Fifth Amendment claim upon which her TRO Application is based.

## II. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain relief, a plaintiff must meet the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

The Ninth Circuit also employs a "sliding scale" approach, where "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. DISCUSSION

To succeed on a petition for a writ of habeas corpus, a petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.[1] The Court finds that Petitioner is entitled to preliminary relief based on her second claim—that her re-detention without process violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

### A. Likelihood of Success

The first *Winter* factor "is the most important," and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The Fifth Amendment guarantees that no person

---

[1] Respondents do not question that the Court has jurisdiction to adjudicate Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "A procedural due process claim has two elements: '(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) (citation omitted). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 1006, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

### 1. Petitioner Has a Protected Liberty Interest

Because Petitioner was previously released on parole, she has a protected liberty interest in remaining free from detention. *See Garcia v. Noem*, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). And even if the government's initial decision to detain or release an individual was within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].' " *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

### 2. Petitioner is Likely to Establish that Respondents Denied Her Adequate Procedural Protections Under the *Mathews* Test

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before Respondents can deprive her of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). The Court considers the three-factor balancing test set forth in *Mathews* to determine whether Respondents' procedures satisfy the Due Process Clause: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

*First*, Petitioner's "private interest" in remaining out of custody is substantial. Petitioner's interest derives from the constitutional right to not be deprived of liberty without due process. It is beyond debate that a person has the utmost interest in remaining out of custody. *See Zadvvdas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects.") After Petitioner's initial detention, Respondents paroled her into the country, creating "an implicit promise" that they would revoke her liberty only if she violated the conditions of her release. Considering the importance of Petitioner's interest in her continued liberty and the government's corresponding implicit promise not to revoke it unless she violates the conditions of her release, Petitioner's private interest is entitled to great weight.

*Second*, the procedures Respondents used pose a high risk of erroneous or unlawful deprivation, and other, more effective procedural safeguards were available. It appears that Respondents re-detained Petitioner without any process at all. Given Petitioner's liberty interest, the lack of pre-deprivation process is *necessarily* inadequate process. Furthermore, civil immigration detention is "nonpunitive in purpose and effect" so it is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvvdas*, 533 U.S. at 690. If the government deprives individuals of liberty unilaterally and with no process, it avoids having to justify the deprivation. That is exactly what Respondents did in this case: they re-detained Petitioner without having to establish that she posed a risk of flight or danger to the community.[2] Petitioner points to facts tending to show that she is neither a flight risk nor a danger to the community: Petitioner alleges that she has violated no laws and has complied with all of the conditions of ISAP—allegations that Respondents do not dispute. When Respondents released Petitioner on parole eighteen months ago, they necessarily determined that she was not a flight risk or a danger to the community. And, when ICE arrested Petitioner, she was leaving a scheduled ISAP check-in—a fact that cuts against her being a flight risk or a danger. Respondents re-detained Petitioner without having to confront, let alone overcome, these facts that favor Petitioner's continued liberty. The Court concludes that there is a high risk that, when Respondents re-detained Petitioner unilaterally and with no process, Respondents

---

[2] Respondents' apparent position that they did not have to justify Petitioner's detention is reinforced by their undeveloped argument that Petitioner's parole expired on the "Admit Until Date" of 08/17/2025 stated on her I-94 form, implying that Respondents could re-detain Petitioner at any time thereafter without reason. This position does not square with the demands of due process.

deprived Petitioner of her liberty erroneously or unlawfully.

      Other effective—and familiar—legal procedures to determine whether Respondent's deprivation of Petitioner's liberty was justified were readily available, specifically, pre-deprivation notice and a hearing before a neutral arbiter who could have evaluated the evidence critically and decided whether Petitioner should be detained under the applicable standard. Such process forces the government to affirmatively justify its proposed deprivation and empowers individuals to test the government's proffered justification. Absent such a check on its power, the government could deprive individuals of their liberty arbitrarily, erroneously, and illegally. Here, without any process, Respondents unilaterally re-detained Petitioner without having to justify or account for that deprivation in any way to anyone, and, in turn, Petitioner had no way to challenge Respondents or to present at least the above facts to a neutral arbiter who could determine whether Petitioner posed a flight risk or danger to the community. As noted, the risk that Respondents, acting unchecked, unlawfully deprived Petitioner of her liberty is high. *See Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025) (where an individual "has not received any bond or custody redetermination hearing, the risk of an erroneous deprivation of liberty is high") (citation modified). The additional process of pre-deprivation notice and a pre-deprivation hearing before a neutral arbiter who would determine the merits of Respondents' move to re-detain Petitioner would have reduced the risk that Respondents unlawfully deprived Petitioner of her liberty.

      *Third*, Respondents have no legitimate interest in re-detaining Petitioner without first providing notice and a hearing. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.") "Nor can [Respondents] suggest that the cost of providing such protections would be fiscally or administratively onerous." *Pinchi*, 792 F. Supp. 3d at 1036. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025). The Respondents' interest is further diminished where, as here "a person 'has consistently appeared for [his] immigration hearings ... and [] does not have a criminal record." *Id.* (citation omitted). If Respondents claim any interest in re-detaining Petitioner without first providing notice and a hearing, it is entitled to no weight.

All of the *Mathews* factors strongly favor Petitioner's claim that Respondents are violating her Fifth Amendment right to due process by re-detaining her without providing her pre-deprivation notice and a pre-deprivation hearing before a neutral arbiter who would determine if Petitioner poses a risk of flight or danger to the community. Petitioner has therefore shown that she is likely to succeed on the merits of her claim that Respondents are violating her Fifth Amendment right to due process by re-detaining and continuing to detain her.

### B. Likelihood of Irreparable Harm

Petitioner contends that she will suffer irreparable harm in the absence of a TRO because she will continue to be unlawfully detained and separated from her family, including her three-year-old child, and her community.

It is well established that the deprivation of constitutional rights "'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the alleged deprivation of a constitutional right is involved, courts recognize that no further showing of irreparable injury is necessary. *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). The Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention," including substandard medical and mental health care and separation from family. *Hernandez*, 872 F.3d at 995. Unlawful detention constitutes "extreme or very serious" injury not compensable by money damages. *Id.* at 999. Petitioner also points to the distress her abrupt disappearance is causing her three-year-old child and, certainly, herself. Respondents' conduct causes irreparable harm absent this circumstance, but this is certainly a compounding factor.

The Court concludes that Petitioner has shown a likelihood of irreparable harm.

### C. Balance of the Equities and Public Interest

The last two *Winter* factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The balance of hardships tips strongly in Petitioner's favor as, without a TRO, she would suffer continued indefinite deprivation of her liberty, likely in violation of her constitutional rights. By contrast, Respondents face no hardship from an order that merely requires them to comport with due process. And the

public interest is served by the issuance of a TRO because "all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). Violations of federal law are neither equitable nor in the public's interest. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

The Court therefore concludes that both the balance of the equities and the public interest weigh heavily in favor of Petitioner.

### D. The Court Waives Bond

Rule 65(c) provides that the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P 65(c). Despite this mandatory phrasing, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). A court may dispense with a bond altogether "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (quoting *Jorgensen*, 320 F.3d at 919). Courts have also waived security where requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

Respondents do not ask for a bond and have not identified any "costs or damages sustained" if it turns out they should not have been enjoined. The Court concludes that this injunction creates no likely risk of harm to Respondents. By contrast, Petitioner has demonstrated a likelihood of success on the merits and the injunction safeguards fundamental due process rights. Therefore, requiring a bond would serve no protective purpose and would deter individuals from seeking to vindicate their constitutional rights. Accordingly, the Court **WAIVES** the bond requirement.

//
//
//
//
//

## IV. CONCLUSION

The Court therefore **GRANTS** Petitioner Akbota Zhalekeyeva's Application for a TRO (Dkt. No. 3) and **ORDERS**:

1. Respondents are **ORDERED to IMMEDIATELY RELEASE** Petitioner from custody, subject only to the conditions of her pre-existing parole. The parties are **ORDERED** to file a Joint Statement regarding Respondents' compliance with this Order by **Friday March 13, 2026, at 10:00 a.m**.

2. Respondents are **ENJOINED** from re-detaining Petitioner without notice of the reasons for revocation of her parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At any such hearing, Respondents must bear the burden of establishing that Petitioner poses a risk of flight or danger to the community.

3. Respondents are **ORDERED TO SHOW CAUSE** in writing why the Court should not issue a preliminary injunction. Respondents must file their response by **Monday March 16, 2026**. Petitioner must file her reply by **Thursday March 19, 2026**. The Court **SETS** a hearing on the preliminary injunction for **Tuesday March 24, 2026, at 4:30 p.m.**, via Zoom.

**IT IS SO ORDERED**.